CHARLES MARCUS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ANITA MARCUS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8256–72, 8257–72.    Filed July 31, 1978.

*Williard A. Herbert,* for the petitioners.
*Robert M. Smith,* for the respondent.

OPINION

HALL, *Judge:* These proceedings arise on this Court's order dated April 7, 1978, directing petitioners to file a response with the Court showing why the matters set forth in respondent's proposed additional supplemental stipulation of facts should not be deemed admitted for purposes of these cases, and on respondent's motion filed April 10, 1978, to impose sanctions under Rule 104 (Tax Court Rules of Practice and Procedure) and requesting partial summary judgment.

In notices of deficiency dated August 9, 1972, respondent determined the following deficiencies and additions to tax:[1]

*Docket No. 8256–72 (Charles)*

| Year | Deficiency in tax | Addition to tax Sec. 6653(b)[2] | Sec. 6654 |
|------|------|------|------|
| 1957 | $9,117.15 | $4,558.58 | $241.41 |
| 1958 | 3,796.59 | 1,898.30 | 92.43 |
| 1959 | 4,498.31 | 2,306.72 | |
| 1960 | 2,775.61 | 1,387.81 | |
| 1961 | 8,188.24 | 4,115.22 | |

*Docket No. 8257–72 (Anita)*

| Year | Deficiency in tax | Addition to tax Sec. 6651(a) | Sec. 6653(a) | Sec. 6654 |
|------|------|------|------|------|
| 1957 | $9,329.41 | $2,270.45 | $466.47 | $251.32 |
| 1958 | 3,654.84 | 851.81 | 182.74 | 92.43 |
| 1959 | 4,433.43 | 1,046.46 | 221.67 | 114.24 |
| 1960 | 2,559.60 | 550.60 | 127.98 | 57.38 |
| 1961 | 8,014.43 | 1,914.59 | 400.72 | 210.16 |

## I. Background

Petitioners filed their petitions on November 6, 1972. In both petitions, petitioners alleged errors in respondent's adjustments with respect to (1) unreported income reflected in unidentified bank deposits, (2) the disallowance of various itemized deductions, and (3) the additions to tax under sections 6651(a), 6653(a), 6653(b), and 6654.

These cases were first set for trial at Dallas, Tex., on May 7, 1974. On April 23, 1974, on petitioners' motions, the cases were continued generally.

Following an unsuccessful attempt in September 1974 to meet with petitioners' then counsel for purposes of entering into a stipulation of facts, respondent, on October 4, 1974, served interrogatories in docket No. 8256–72 (Charles) on petitioners' then attorney. Attached to the interrogatories were 29 exhibits containing schedules of approximately 5,000 checks and 1,600

---

[1] Charles and Anita Marcus are husband and wife. Charles filed separate returns for 1959, 1960, and 1961 on May 29, 1968. Neither Charles nor Anita has filed returns for 1957 or 1958. In addition, Anita has not filed returns for 1959, 1960, or 1961.

[2] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

deposit slips on Charles' and Anita's joint accounts and on Charles' separate accounts. The interrogatories requested Charles to classify each of these items.

On October 17, 1974, respondent also served a 64-page, 144-paragraph request for admissions in docket No. 8256–72 (Charles) on petitioners' then attorney and on that same day served a request for production of documents on petitioners' then attorney. With respect to docket No. 8257–72 (Anita), respondent served on petitioners' then attorney a 5-page, 20-paragraph request for admissions.

Thereafter, on October 31, 1974, this Court set the cases for trial on February 3, 1975, in Dallas, Tex.

On December 24, 1974, respondent filed motions for leave to file out-of-time motions (1) to have the requested admissions deemed admitted with respect to Charles and Anita, (2) for an order compelling Charles to serve answers or submit objections to respondent's interrogatories or to impose sanctions under Rule 104, and (3) for an order compelling Charles to respond to respondent's request for production of documents or impose sanctions under Rule 104. On the same day, respondent lodged the 3 out-of-time motions with the Court.

On January 28, 1975, a hearing was held in Dallas, Tex., before Judge Fay on respondent's motion for leave to file the 3 out-of-time motions. At that hearing petitioners' then counsel orally informed the Court that he was considering withdrawing from the case. The Court reserved its ruling on these motions until the call of the calendar for the Dallas trial session on February 3, 1975.

On February 3, 1975, at the trial session in Dallas, petitioners' then counsel orally moved to withdraw as counsel in these cases. This motion was granted and Judge Fay instructed petitioner Charles Marcus as follows:

you're going to have to get these facts out on the table, Mr. Marcus and I'm not just talking to hear myself talk. If there — if you don't get counsel and there is not full and complete cooperation with respondent's counsel by your new counsel, then the Court will entertain a motion to impose sanctions.

＊　　＊　　＊　　＊　　＊　　＊　　＊

Now whatever lack of cooperation there has been in the past, that's over with. We've now arrived at a juncture where, if you don't cooperate, sanctions will be imposed, and that's the order of the Court.

By written order the same day, the Court continued the cases

generally and denied without prejudice to renew respondent's motion for leave to file out-of-time motions for (1) an order to have respondent's requests for admissions deemed admitted by petitioners, (2) an order to compel answers to respondent's interrogatories, and (3) an order to compel response to respondent's requests for production of documents. The Court also stated in its order that "petitioner is hereby notified that upon his failure to proceed expeditiously as to the oral directions of the Court, the Court will be forced to take appropriate actions."

On March 25, 1975, petitioners' new counsel informed the Court by letter that he had been engaged to handle the pending cases. On June 30, 1975, respondent filed a motion to consolidate these cases.

On July 1, 1975, respondent served on petitioners' new attorney copies of the interrogatories previously served on October 4, 1974, and requests for admissions and production of documents previously served October 17, 1974. Subsequently, on July 25, 1975, respondent renewed his motions to compel Charles to answer interrogatories and produce the documents requested or impose sanctions under Rule 104. In addition, respondent on the same day filed motions with respect to both Charles and Anita to declare his requests for admissions deemed admitted.

A hearing was held on these motions and respondent's motion to consolidate on August 27, 1975, in Washington, D.C. At that hearing this Court granted respondent's motion to consolidate and by order dated September 4, 1975, directed the parties to submit a detailed stipulation of facts in accordance with Rule 91(a) by November 15, 1975. The Court also ordered the parties to report on the status of the cases at the call of the calendar for the Dallas trial session beginning December 1, 1975. The Court further ordered that action on respondent's motions regarding discovery was to be held in abeyance.

Subsequently, on November 10, 1975, the Court on petitioners' motion extended to January 15, 1976, the date for filing a detailed stipulation of facts.

On November 14, 1975, the Court granted respondent's motion to set for hearing the motions to compel answers to interrogatories and to compel production of documents or impose sanctions under Rule 104, filed July 25, 1975, and which had been held in abeyance by the order dated September 4, 1975. A hearing on respondent's motions was held on December 1, 1975, in Dallas,

Tex., before Judge Scott at which time the parties represented to the Court that they had reached an agreement to stipulate facts which might render respondent's motions moot. The Court thus entered an order dated December 1, 1975, suspending action on respondent's motions to compel answers to interrogatories and for production of documents or to impose sanctions until after the filing of a stipulation, and the Court denied respondent's motion for order to have his requests for admissions deemed admitted without prejudice to the right of respondent to again file the requests for admissions.

Thereafter, on December 5, 1975, the parties through their counsel held a conference with Judge Scott in Dallas and agreed to make every effort to stipulate the cases, and petitioners' counsel agreed to begin working with petitioners' accountant in preparing schedules of petitioners' checks and deposit slips for the years in issue.

On January 23, 1976, the parties submitted a 9-page, 64-paragraph partial stipulation of facts to the Court. On January 28, 1976, respondent again renewed his motions to compel answers to interrogatories and for production of documents or to impose sanctions with respect to Charles. On February 27, 1976, this Court, on representation of petitioners' counsel that he had furnished respondent with details of deposit slips and checks for the years in issue and his representation that he would continue his search for any missing bank statements, checks, and deposit slips, denied respondent's two motions and directed the parties to comply with the requirements of Rule 91(a) by attempting to stipulate all relevant facts, documents, and papers.

Respondent on March 31, 1976, filed a motion for reconsideration of the February 27, 1976, order of this Court. That motion was based on the ground that petitioners had failed to furnish him with information regarding the purpose of approximately 5,000 checks and the nature of approximately 1,600 deposit slips which are in issue in these cases. By order dated May 27, 1976, the Court denied respondent's motion for reconsideration of its February 27, 1976, order.

On June 28, 1976, respondent filed a second motion for reconsideration of the Court's February 27, 1976, order. On November 8, 1976, a hearing was held on respondent's second motion before Judge Sterrett in Dallas. Following the hearing, the Court, by order dated December 8, 1976, granted respon-

dent's second motion for reconsideration and after reconsideration left its February 27, 1976, order denying respondent's motions unchanged. The Court, however, ordered counsel for petitioners to provide respondent with a classification of petitioners' checks and deposits for 1957, 1958, 1959, and 1961 by February 7, 1977. This order in essence was an order compelling Charles to answer respondent's interrogatories which had originally been served on October 4, 1974. On December 30, 1976, respondent filed a motion to revise the December 8, 1976, order to include 1960 which had been inadvertently omitted from the Court's written order. Petitioners filed an objection to respondent's motion alleging that they had opposed the Court's December 8, 1976, order and thus opposed a revision thereof. Petitioners' motion thus ignored their counsel's agreement that he would cooperate in stipulating everything possible in the above-entitled cases.

Thereafter, on January 31, 1977, counsel for petitioners submitted to respondent a classification of Charles' checks and deposit slips for 1957 and 1958 in accordance with the Court's order dated December 8, 1976.

Respondent, on February 8, 1977, filed a motion for order to impose sanctions under Rule 104, relative to the years 1959, 1960, and 1961. The motion was based on petitioners' failure to comply with the December 8, 1976, order to classify the checks and deposits for those years on or before February 7, 1977. A hearing on respondent's motion was held on May 23, 1977, before Judge Hall in Dallas. The hearing followed a pretrial conference. At that hearing, the Court instructed petitioners' counsel that the Court would give petitioners one more chance to classify the checks and deposit slips for 1959, 1960, and 1961. The Court also warned petitioners' counsel that the failure to do so would give rise to the imposition of sanctions by this Court. The Court stated:

THE COURT: I want him [Charles Marcus] to classify them now. *I want him to answer the interrogatories.* I want him to classify the individual checks and deposit receipts. * * * I am not interested in the accountant's work papers. I'm asking you to classify individual checks. The fact that you don't have the original, or that somebody has some work papers, doesn't help me at all.

\* \* \* \* \* \* \*

THE COURT: Well, Mr. Herbert, I will give you a choice, you can have your client *answer those questions in the interrogatories, or I will take sanctions.* I will give you one more chance.

MR. HERBERT: Well, if that's the only choice I have Your Honor, I have to do that.

THE COURT: That's the only choice you've got at this point. I'm not going to —

MR. HERBERT: Well, if that's the only choice I have, then I have to do that, however, I'd like the record to show that I object to the Court's ruling.

THE COURT: The record will show it.

[Emphasis added.]

Following the hearing the Court issued an order[3] denying respondent's motion to impose sanctions and further providing:

That petitioners will review all respondent's copies of petitioners' checks and deposit slips for the years 1959, 1960, and 1961 and classify them for respondent by October 3, 1977.

That the parties will complete a stipulation of the classification of petitioners' checks and deposit slips for the years 1957 and 1958 and file said stipulation with the Court by September 1, 1977.

That the parties will complete a stipulation of the classification of respondent's copies of petitioners' checks and deposit slips for the years 1959, 1960, and 1961 and file said stipulation with the Court by February 1, 1978.

On June 3, 1977, these cases were assigned to Judge Hall for trial, briefing, and opinion. Subsequently, petitioners filed a motion to set aside the assignment to Judge Hall of their cases alleging prejudice by Judge Hall. Chief Judge Featherston denied petitioners' motion.

On September 26, 1977, a pretrial conference and hearing was held in Dallas on respondent's motion for leave to file amendment to answer and to report on the parties' progress in complying with the Court's May 17, 1977, order.

Following that pretrial conference and hearing the Court entered an order dated September 26, 1977, establishing a new schedule for stipulating the classification of the checks and deposit slips. The order also provided for several conference telephone calls between the Court and the parties' counsel in order to facilitate the expeditious completion of the stipulation. The order provided the following time schedule for classification and stipulation of petitioners' checks and deposit slips:

That the parties will complete a stipulation of the classification of petitioners' checks and deposit slips for the years 1957 and 1958 and file said stipulation with the Court by November 25, 1977.

That petitioners will review all respondent's copies of petitioners' checks and

---

[3]Although the hearing was held May 23, 1977, the order was inadvertently dated May 17, 1977.

deposit slips for the years 1959, 1960, and 1961 and classify them for respondent by March 27, 1978.

That the parties will complete a stipulation of the classification of respondent's copies of petitioners' checks and deposit slips for the years 1959, 1960, and 1961 and file said stipulation with the Court by June 26, 1978.

On November 22, 1977, petitioners' counsel by mailgram informed the Court that the parties were unable to reach an agreement on a proposed stipulation as directed in the September 26, 1977, order.

On November 23, 1977, the Court ordered respondent to file a proposed supplemental stipulation with respect to 1957 and 1958 in conformity with the September 26, 1977, order on or before November 25, 1977, and to serve a copy of the stipulation on petitioners. The Court further directed petitioners to file on or before December 2, 1977, a response with the Court showing specifically why the matters set forth in respondent's initial supplemental stipulation should not be deemed admitted for purposes of the pending cases.

On December 1, 1977, petitioners filed a motion without any specific statement why the matters set forth in respondent's proposed stipulation should not be admitted; petitioners merely requested that respondent's initial supplemental stipulation of facts be denied. In their motion petitioners alleged that respondent's initial supplemental stipulation was mistitled and misnumbered, very difficult to follow, unnecessarily complex, and in some instances, incomprehensible. Thereafter the Court on January 6, 1978, denied petitioner's motion and ordered that the matters set forth in respondent's initial supplemental stipulation be deemed admitted for purposes of the pending cases. The Court further ordered that the parties comply on schedule with the remainder of the order dated September 26, 1977.

## A. *April 7, 1978, Order Relating to 1957 and 1958*

Respondent, on March 23, 1978, filed a motion for pretrial hearing for the purpose of narrowing the issues and simplifying the presentation of evidence by assisting the parties in entering into a stipulation of facts or to impose sanctions. In the motion respondent alleged that petitioners had refused to stipulate to the authenticity of various documents relating to 1957 and 1958 (not included in the prior supplemental stipulation deemed

admitted on January 6, 1978) which respondent believed were copies of documents he received from petitioners.

On April 7, 1978, the Court directed petitioners to file on or before May 10, 1978, a response to respondent's motion showing why the matters set forth in respondent's additional supplemental stipulation should not be deemed admitted for purposes of the pending cases. The Court also ordered that if petitioners failed to file a response or filed an evasive response, appropriate sanctions would be imposed with respect to 1957 and 1958.

On May 8, 1978, petitioners filed a response to this Court's order dated April 7, 1978, alleging with respect to 1957 and 1958 as follows:

Counsel for petitioners told Counsel for respondent that petitioners would not stipulate papers that would merely stipulate in favor of respondent's position, i.e., the fraud penalties, nor otherwise stipulate to any attempt by the respondent to cause petitioners to stipulate themselves "out of Court."

This is one of the matters to be resolved herein.

B. *Respondent's Motions to Impose Sanctions Under Rule 104 With Respect to 1959, 1960, and 1961*

On April 10, 1978, respondent filed a motion to impose sanctions under Rule 104 and requested partial summary judgment with respect to 1959, 1960, and 1961 on account of petitioners' failure to comply with the Court's September 26, 1977, order to classify checks and deposit slips with respect to those years. In his motion respondent alleged that petitioners had classified only 292 checks of a total of 3,375 and 103 deposit slips of a total of 1,067 which related to the years 1959, 1960, and 1961. On May 9, 1978, petitioners filed a response to respondent's motion to impose sanctions under Rule 104 with respect to 1959, 1960, and 1961 alleging that they had attempted to comply with the Court's September 26, 1976, order directing them to classify their checks and deposit slips for 1959, 1960, and 1961, but that respondent had refused to supply them with copies of schedules of their checks and deposit slips for 1959, 1960, and 1961 which were attached to respondent's interrogatories served October 4, 1974. Petitioners' attorney further alleged that he had never seen a copy of the schedules and that respondent refused to make available to him copies of the schedules.

This is the other matter to be resolved herein.

## II. Years 1959, 1960, 1961

We turn initially to respondent's motion to impose Rule 104(c)[4] sanctions against petitioners for their failure to comply with this Court's orders dated December 8, 1976, May 17, 1977, September 26, 1977, and January 6, 1978, directing them to answer respondent's interrogatories. Each of the above orders required petitioners to classify respondent's copies of petitioners' checks and deposit slips for 1959, 1960, and 1961.[5]

Pursuant to section 7453, this Court has prescribed rules of practice and procedure for the conduct of proceedings before it. Under Rule 123, if a party fails to proceed as provided by the Rules of this Court or as required by this Court, the Court may hold the party in default and enter a decision against him, or it may impose such sanctions as it may deem appropriate. Under Rule 104, if a party fails to obey an order with respect to the discovery provisions of the Rules, the Court may impose such sanctions as it deems appropriate. Finally, under Rule 91, where a party fails to stipulate as to various matters, the opposing party may lodge a proposed stipulation and motion to show cause why the matter covered in the proposed stipulation should not be deemed admitted.

In October 1974 respondent attempted to enter into a stipulation of facts with petitioners. Unsuccessful in that attempt, respondent then sought to obtain certain information by means of discovery. Again respondent was unsuccessful and as a consequence moved for a court order requiring Charles to answer various interrogatories. Initially, this Court denied

---

[4]Rule 104(c), Tax Court Rules of Practice and Procedure, provides in part:

(c) Sanctions: If a party * * * fails to obey an order made by the Court with respect to the provisions of Rules 71 [Interrogatories], * * * the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purpose of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order.

[5]Petitioners' assertion that they should not have been compelled to classify their checks and deposit slips since respondent bears the burden of proof with respect to the fraud issue is without merit. See *Piscatelli v. Commissioner*, 64 T.C. 424 (1975).

respondent's motion and directed the parties to submit a comprehensive stipulation of facts. However, after the parties were unable to enter into a comprehensive stipulation, this Court on four occasions ordered Charles to answer respondent's interrogatories and ordered petitioners to classify their checks and deposit slips for the years 1959, 1960, and 1961. In addition, on two occasions this Court specifically warned Charles and petitioners' attorney that their failure to comply with this Court's orders would result in the imposition of sanctions.

Nonetheless, throughout these proceedings petitioners have refused all reasonable cooperation with this Court and respondent. They have refused to furnish respondent with information to which he is entitled (see *Piscatelli v. Commissioner*, 64 T.C. 424 (1975)) and have repeatedly failed to comply with this Court's orders to classify their checks and deposit slips for 1959, 1960, and 1961. Their actions and tactics have delayed the proceedings and hindered respondent and this Court every step of the way toward trial of the issues on their merits.

Petitioner Charles Marcus, an attorney who was admitted to practice in Texas in 1949, was warned by Judge Fay that his failure to cooperate with this Court and respondent in moving these cases to trial would result in the imposition of sanctions against him. Petitioners' attorney was given ample notice that the Court would give Charles one last chance to comply with its orders to classify petitioners' checks and deposit slips for the years in issue. Thereafter, the Court extended the time within which petitioners were to comply with the Court's order and later by order again directed petitioners to comply with the timetable. Nonetheless, petitioners have refused to comply with the orders of this Court. Instead, they have continued their tactics of delay and inaction. This studied course of conduct leads us to believe that any further conferences, hearings, or orders requiring compliance with our prior orders would be futile. We therefore see no alternative but to grant respondent's motion to impose sanctions pursuant to Rule 104 and we hereby impose the following sanctions against Charles:

1. The allegations of error contained in Charles' petition relative to the years 1959, 1960, and 1961 are stricken.
2. The allegations of fact contained in Charles' petition relative to 1959, 1960, and 1961 are stricken.

3. The affirmative allegations of fraud relative to 1959, 1960, and 1961 in respondent's answer to Charles' petition are deemed admitted.

4. The affirmative allegations of fraud relative to 1959, 1960, and 1961 in respondent's amendment to answer are deemed admitted.

## III. Years 1957 and 1958

We next turn to petitioners' failure to comply with this Court's order dated April 7, 1978, directing them to respond to respondent's proposed supplemental stipulation of facts with respect to 1957 and 1958. In that order we directed petitioners to show specifically why the matters set forth in respondent's proposed stipulation should not be deemed admitted. In response petitioners filed a document which stated, inter alia, that petitioners would not stipulate to any documents which would favor respondent's position. In light of petitioners' failure properly to respond to the Court's April 7, 1978, order, we deem admitted respondent's proposed supplemental stipulation. Cf. Rule 91(f), Tax Court Rules of Practice and Procedure.

We admonish both Anita and Charles that further delay and inaction in moving these cases (now limited to 1957 and 1958) to trial will not be tolerated by this Court. If such tactics are continued this Court will be compelled to take action under Rule 123(b) which provides in pertinent part: "For failure * * * properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner."

We also see no alternative but to impose sanctions against Anita pursuant to Rule 123. Each order of this Court ordering petitioners to enter into a stipulation and supply respondent with certain information was directed to both Anita and Charles. During 1959, 1960, and 1961 Anita and Charles maintained various checking and savings accounts in their joint names as well as their individual names. The orders of this Court requiring petitioners to classify various checks and deposit slips were directed to checks and deposit slips for these accounts. Nonetheless, Anita has made no effort to supply respondent with any information regarding these matters, nor has she made any effort to enter into a stipulation. In addition, she has

provided respondent with virtually no information from which he could prepare a proposed stipulation with respect to 1959, 1960, and 1961. Both Charles and Anita have been represented by the same attorneys. Charles' and Anita's earnings are community property taxable one-half to Charles and one-half to Anita. *Hopkins v. Bacon,* 282 U. S. 122 (1930). In light of these facts, we impose the following sanctions against Anita:

1. The allegations of error contained in Anita's petition relative to 1959, 1960, and 1961 are stricken.
2. The allegations of fact contained in Anita's petition relative to 1959, 1960, and 1961 are stricken.

No fraud penalty was asserted against Anita.

## IV. Partial Summary Judgment

We turn finally to respondent's request for partial summary judgment with respect to deficiencies and additions to tax under sections 6651(a), 6653(a), 6653(b), and 6654 for 1959, 1960, and 1961. The following findings of fact are based on those portions of the petitions admitted by respondent in his answers, the affirmative allegations of respondent's answers which have been deemed admitted, and on the partial stipulation of facts filed January 23, 1976.

Petitioners resided in Dallas, Tex., at the time they filed their petitions herein.

### A. *Charles*

Charles received a B.S. degree from the University of Illinois and an LL.B. degree from the University of Mississippi Law School in 1948. In September 1949 Charles passed the Texas bar examination and in December began practicing law in Dallas, where he was still practicing during the years in issue. In addition, Charles was involved in an architectural and engineering enterprise in Dallas during the years in issue. Charles filed individual Federal income tax returns for 1959, 1960, and 1961 on May 29, 1968.

During the years in issue Charles' total deposits in various checking and savings accounts were as follows:

| 1959 | 1960 | 1961 |
|------|------|------|
| $153,019.58 | $121,320.38 | $185,448.98 |

Charles' gross receipts (after adjustments for non-income items) were as follows:

| 1959 | 1960 | 1961 |
|------|------|------|
| $98,060.07 | $60,349.35 | $84,856.82 |

Charles incurred the following deductible business expenses during the years in issue:

| 1959 | 1960 | 1961 |
|------|------|------|
| $67,127.46 | $40,537.14 | $42,388.23 |

During the years in issue Charles did not receive any gifts or inheritances.

Charles failed to maintain adequate books and records of his income-producing activities. The only records maintained by or on behalf of Charles were certain bank records which were incomplete and failed to disclose all of his receipts and disbursements.

During the investigation of Charles' income tax liability Charles informed respondent's agents that he had invoices for currency received as well as bank records. He later informed respondent's agents that the invoices had been destroyed by his secretary and that his only records were the bank records. Charles, however, delayed furnishing respondent's agents with his bank records from May 23 until October 1, 1963. In addition, he concealed some of his bank accounts from respondent's agents during the investigation and repeatedly failed to meet with respondent's agents during the investigation.

Charles also altered a check to bear the notation "income tax 1961" and told respondent's agents that $10,000 received from Disco Corp. for legal services was a loan.

Although Charles denied knowledge of the tax law relative to filing tax returns, he filed a joint income tax return for 1956 and filed separate returns for himself and Anita for 1962 to take advantage of the $1,000 limitation on capital losses. All three returns were filed prior to the time respondent began his investigation of the years in issue.

During the years in issue Charles understated his taxable income as follows:[6]

---

[6]The above computations reflect the fact that personal earnings of a husband and a wife in Texas during marriage constitute community property, and only one-half of such earnings are taxable to petitioner. See *Hopkins v. Bacon*, 282 U.S. 122 (1930).

| *1959* | *1960* | *1961* |
|---|---|---|
| $14,384.93 | $11,287.97 | $21,777.25 |

Prior to the expiration of the time prescribed for assessment of income tax due for 1959, 1960, and 1961, Charles and respondent executed agreements in writing extending the period for assessment to December 31, 1971. The date was further extended under subsequent agreements to December 31, 1972.

## B. *Anita*

Anita has not filed Federal income tax returns for 1959, 1960, and 1961.

During the years in issue Anita was married to Charles Marcus. Charles' net income from the practice of law during the years in issue was as follows:

| *1959* | *1960* | *1961* |
|---|---|---|
| $30,932.61 | $19,812.21 | $42,468.69 |

In addition, Anita was employed and received wages in the following amounts:

| *1959* | *1960* | *1961* |
|---|---|---|
| $3,350 | $4,600 | $4,550 |

During the years in issue Anita had unreported income as follows:[7]

| *1959* | *1960* | *1961* |
|---|---|---|
| $14,368.99 | $9,763.54 | $21,347.18 |

Anita's failure to timely file returns for 1959, 1960, and 1961 was due to willful neglect.

Anita's failure to pay tax for 1959, 1960, and 1961 was due to negligence or intentional disregard of rules and regulations.

Anita failed to pay her estimated income tax for 1959, 1960, and 1961.

---

[7]See n. 6.

## C. *Conclusions*

In view of the fact that we have stricken the allegations of error and fact in Charles' and Anita's petitions for 1959, 1960, and 1961, no issues of fact or law remain in dispute as to those years with respect to those deficiencies and additions to tax under sections 6651(a), 6653(a), and 6654. Accordingly, we sustain respondent's determination for those years with respect to those deficiencies and additions to tax.

Respondent has also requested summary judgment on the fraud issue with respect to Charles for the years 1959, 1960, and 1961.

Section 6653(b) imposes a 50-percent addition to tax for any year in which any part of an underpayment of tax for that year is due to fraud. The existence of fraud is a question of fact to be determined upon consideration of the entire record. *Stratton v. Commissioner,* 54 T.C. 255, 284 (1970). The burden of proving fraud is on respondent (sec. 7454(a)) and clear and convincing evidence is required to carry this burden. Rule 142(b), Tax Court Rules of Practice and Procedure; *Cefalu v. Commissioner,* 276 F.2d 122, 128 (5th Cir. 1960); *Otsuki v. Commissioner,* 53 T.C. 96, 106 (1969). To prove fraud, respondent must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. *Stoltzfus v. United States,* 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); *Powell v. Granquist,* 252 F.2d 56, 60 (9th Cir. 1958); *Mitchell v. Commissioner,* 118 F.2d 308, 310 (5th Cir. 1941).

In this case, material allegations in the answer and amendment to answer with respect to fraud have been deemed admitted. Accordingly, respondent's burden of going forward to prove the facts in those allegations has been discharged. *Gilday v. Commissioner,* 62 T.C. 260 (1974). On the basis of those facts we conclude that respondent has sustained his burden of proof by clear and convincing evidence for each of the years in issue.

Although mere understatement of income standing alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, by itself, strong evidence of fraud. *Cefalu v. Commissioner, supra* at 129. Here, Charles understated his income by substantial amounts for a period of 3 consecutive years.

In addition, he failed to timely file returns during each of the years in issue, notwithstanding the fact that he earned

substantial income and was an attorney aware of his obligation to file returns.

Other indicia of fraud are Charles' failure to keep adequate books and records, *Powell v. Granquist*, 252 F.2d 56, 59–60 (9th Cir. 1958), and his failure to cooperate with the revenue agents conducting the investigation of his tax liability. *Powell v. Granquist, supra; Vise v. Commissioner*, 31 T.C. 220, 226 (1958), affd. 278 F.2d 642 (6th Cir. 1960). Further, Charles' alteration of a canceled check to reflect the payment of income taxes in 1961 and his statement to respondent's agents that moneys received for the performance of legal services were loans constitute additional evidence of fraud.

In light of the foregoing, we conclude that respondent has shown by clear and convincing evidence that Charles is liable for additions to tax for fraud under section 6653(b) for 1959, 1960, and 1961.

The foregoing does not dispose of these cases. Still remaining for trial are Charles' and Anita's allegations that respondent erred in his determination of their taxable income for 1957 and 1958. Also remaining for trial are the additions to tax under sections 6653(b)(fraud) and 6654 (failure to pay estimated tax) with respect to Charles for 1957 and 1958 and the additions to tax under sections 6651(a)(failure to file a return), 6653(a) (negligence), and 6654 (failure to pay estimated tax) with respect to Anita for 1957 and 1958. These matters will be set for trial beginning on or about November 8, 1978, and the parties are to complete discovery in preparation for the trial on or before September 1, 1978.

*An appropriate order will be entered.*