FRANK A. GUALTIERI, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gualtieri v. Commissioner
Docket No. 9629-78.
United States Tax Court
T.C. Memo 1981-104; 1981 Tax Ct. Memo LEXIS 639; 41 T.C.M. (CCH) 1054; T.C.M. (RIA) 81104; March 5, 1981. Harold J. Boreanaz, for the petitioner. George W. Connelly, Jr., and Carolyn Boyer, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling an respondent's motion for partial summary judgment filed herein. After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
*640 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's motion for partial summary judgment filed on December 30, 1980, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent, in his notice of deficiency issued to petitioner and Linda A. Gualtieri on May 18, 1978, determined the following deficiencies in, and additions to, petitioner's 1971 and 1972 Federal income tax: [3]
Additions to Tax, 1954 Code
Year
Deficiency
[4] Section 6653(b)
1971
$ 2,468.70
$ 1,234.35
1972
[5] 1,548.81
774.41
The procedural sequence of events resulting in this case began with the issuance of the notice of deficiency to petitioner on May 18, 1978. On August 16, 1978, petitioner timely filed his petition, in *641 response to which respondent timely filed his answer on September 28, 1978. In that answer respondent, inter alia, made affirmative allegations of fact in support of his determined deficiencies in income tax and additions to the tax under section 6653(b). On March 13, 1979, respondent filed a motion for leave to file motion for an order that undenied allegations in the answer be deemed admitted out of time. The delay in filing that motion was due to respondent's inability to locate a current address for petitioner. [6] On the same date respondent's motion for entry of order that undenied allegations in answer be deemed admitted was "lodged" with the Court. Thereafter, the Court, having acquired an address for petitioner in the state of Michigan, issued an order on March 20, 1979, in which it granted respondent's motion for leave, filed respondent's motion for entry of order, and directed the filing of a reply on or before April 10, 1979. Upon petitioner's informal request, the Court by order dated April 24, 1979, extended the time for the filing of a reply to May 9, 1979. When that order was returned to the Court "unclaimed", another order was issued on May 22, 1979, which *642 was served on petitioner by both certified and regular mail, which said order provided in pertinent part-- [T]he hearing, if any, on respondent's motion under Rule 37(c) is continued from the May 30, 1979 Washington, D.C. Motions Session of the Court to the June 20, 1979 Motions Session of the Court * * *, and the time within which petitioner is to file a proper reply in this case is extended to June 6, 1979. * * * The matter came on for hearing at Washington, D.C., on June 20, 1979. No appearance was made by or on behalf of petitioner nor was a reply filed. At the conclusion of the hearing, we granted, by order bearing that date, respondent's motion under Rule 37(c) and deemed admitted for purposes of this case the undenied affirmative allegations of fact set forth in paragraphs 8(a) through 8(t) of respondent's answer. Subsequently, this case, together with a related case, was called for trial at Buffalo, New York, on May 12, 1980. They were continued generally for trial in due course upon *643 the representations of petitioner's counsel, who formally entered his appearance in this case on July 21, 1980. As indicated hereinbefore, no appearance was made by or on behalf of petitioner at the hearing on respondent's pending motion on February 18, 1981, (see footnote 1, supra) and no response to that motion was filed. At the conclusion of the hearing, the Court took respondent's motion under advisement. The following findings of fact are based upon those portions of petitioner's petition admitted by respondent in his answer, and the undenied factual allegations contained in respondent's answer deemed to be admitted pursuant to the Court's order dated June 20, 1979. FINDINGS OF FACT Petitioner set forth no address in the petition which he filed on August 16, 1978. However, the envelope in which the petition was received lists the address of a law firm to be "906 State Tower Building, Syracuse, New York". For each of the taxable calendar years 1971 and 1972 petitioner and Linda A. Gualtieri filed joint Federal income tax returns with the office of the Director of the Internal Revenue Service Center at Andover, Massachusetts. From September 23, 1968, to April 5, 1974, petitioner *644 was a 50 percent shareholder in the 800 Development Corporation (hereinafter called Corporation). John Ginestro ("Ginestro") was the owner of the remaining 50 percent of the Corporation's stock. In 1971 the Corporation sold a parcel of land and a restaurant building to Dean P. Vlassis ("Vlassis") for $ 100,000. Prior to the sale, petitioner and Ginestro discussed the terms of the sale and agreed that the sale would be reported as $ 80,000, and Ginestro and petitioner would receive $ 20,000 in currency as an "under the table" payment. Ginestro received the $ 20,000 in currency and paid one-half of it to petitioner. No portion of the $ 10,000 in currency which petitioner received as his share of the "under the table" payment was reported on the corporate books and records or on petitioner's 1971 Federal income tax return. The $ 20,000 "under the table" currency payment constitutes additional consideration for the land and restaurant which should have been reflected on the books and records of the corporation. The $ 10,000 portion of the "under the table" payment received by petitioner is in effect a distribution from the corporation. In 1972 petitioner and Ginestro agreed *645 to discount the purchase money mortgage from the sale of the land and restaurant by the Corporation to Vlassis. The mortgage, which then had an outstanding balance of $ 55,800, was discounted to $ 35,000, and Vlassis paid to Ginestro $ 10,000 in currency as an "under the table" payment. Ginestro gave $ 5,000 of the $ 10,000 in currency to petitioner as his share of the mortgage. No portion of the $ 5,000 in currency which petitioner received as his share of the "under the table" payment was reported on the Corporation's books and records or on petitioner's 1972 Federal income tax return. The $ 5,000 "under the table" currency payment constitutes a distribution to petitioner from the corporation. Both distributions of currency from the Corporation are income to petitioner and should have been reported on his 1971 and 1972 Federal income tax returns. Petitioner understated his taxable income on his income tax returns for the taxable calendar years 1971 and 1972 in the amounts of $ 9,874.75 and $ 2,316.25, respectively. Petitioner understated his income tax liabilities on his 1971 and 1972 income tax returns in the respective amounts of $ 2,468.70 and $ 1,548.81. OPINION
*646 At the outset, we feel constrained to comment briefly on petitioner's failure to file a reply. Our recital of the procedural developments in this case demonstrates to our satisfaction that petitioner was given more than an ample opportunity to file a reply. Although he sought more time for the filing of his reply and the Court gave him until June 6, 1979, to do so, no reply was filed. We also observe that, while petitioner's counsel was served with a copy of respondent's motion and memorandum on January 6, 1981, some 43 days in advance of the hearing on respondent's motion, no response to that motion was filed with this Court. [7] Petitioner and his counsel have, in essence, ignored the notices and orders issued to them and, by their conduct, have shown complete and utter disrespect for the rules of this Court. *647 We now turn to the substantive issue before us. Respondent in his motion requests this Court to "enter a decision of partial summary judgment for the respondent on the issue of whether part of the underpayments of income taxes required to be shown on petitioner's returns for each of the taxable years 1971 and 1972 is due to fraud". We will restrict ourselves to that request even though the record provides some indication that the request may have been broader. Here respondent has determined against petitioner the 50 percent fraud penalty provided for in section 6653(b), which permits the imposition of such addition to tax if any part of any underpayment of tax required to be shown on a return is due to fraud. Up to this juncture, the Court has not determined, nor has it been asked to determine, the exact amount of the underpayment by petitioner for either year involved herein, and, therefore, it will not determine the precise amount of the addition to tax for either year since the amount thereof is necessarily tied in with the amount of the underpayment. [8] "However, propriety of additions to tax for fraud in dependent upon whether petitioner harbored an intent to evade *648 a tax believed to be owing. That issue, it is believed, is one which is appropriate for a partial summary adjudication under Rule 121, even in the absence of the usual prior determination of the precise amount of the underpayment of tax." See Smith v. Commissioner,T.C. Memo. 1980-410. The burden of proof with respect to the fraud issue is upon respondent to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Section 7454(a); Rule 142(b); Imburgia v. Commissioner,22 T.C. 1002 (1954). That burden can be satisfied by respondent through allegations made by petitioner in his petition which are admitted by respondent in his answer and through those undenied facts admitted under Rule 37(c). Marcus v. Commissioner,70 T.C. 562 (1978); *649 Gilday v. Commissioner,62 T.C. 260 (1974); Morris v. Commissioner,30 T.C. 928 (1958); Black v. Commissioner,19 T.C. 474 (1952). [9] Here material allegations in the answer with respect to fraud have been deemed to be admitted by petitioner in the Court's order of June 20, 1979. [10]
In our view the findings of fact clearly and convincingly establish fraud with intent to evade tax. While we deal with only two principal transactions in this case, it is difficult to imagine a scheme planned with more premeditation and designed to divert corporate receipts and to conceal taxable income. Petitioner, a 50 percent shareholder in the Corporation, discussed with the other 50 percent shareholder *650 both the sale of the parcel of land with a restaurant thereon and the discount of the purchase money mortgage. They agreed that the sale of the land and building would be "reported" at $ 80,000 and that they would receive in cash the balance of the sale price of $ 20,000 to be divided equally. Similarly, they agreed that the mortgage, which then had an outstanding balance of $ 55,800, would be discounted to $ 35,000 upon receipt of a cash payment of $ 10,000, again to be divided equally. Petitioner has admitted receipt of the cash payments of $ 10,000 and $ 5,000, neither of which amounts found their way into the corporate books and records or petitioner's 1971 and 1972 returns. Failure to record income on corporate books and records and dealing in "under the table" cash payments such as we have here have long been held to be indicia or badges of fraud. [11] In light of the foregoing, there is no doubt that whatever underpayments of tax are eventually determined by this Court are due to fraud with intent to evade tax on petitioner's part. *651 There being no genuine issue of material fact, respondent is entitled to prevail on the issue presented for partial summary judgment. Accordingly, respondent's motion will be granted and an order will be issued to the effect that petitioner is liable for the additions to the tax under section 6653(b). The case will remain on the Court's docket for decision on the exact amount of the underpayment for each year, the resolution of which will determine the amount of the addition to the tax for each year. An appropriate order will be issued.
Footnotes
1. The parties were afforded a full opportunity to present their views on the law at the hearing at Washington, D.C., on February 18, 1981. No appearance was made by or on behalf of petitioner nor was a response to respondent's motion filed, albeit a copy thereof and a copy of respondent's memorandum of points and authorities together with a copy of the Court's notice of hearing were served on counsel for petitioner by the Court on January 6, 1981.↩
2. All rule references herein are to the Tax Court Rules of Practice and Procedure.↩
3. Linda A. Gualtieri did not join in the petition and is not a party in this case.↩
4. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
5. Petitioner, at paragraph 3 of his petition, does not dispute this deficiency in tax.↩
6. The record is clear that petitioner had moved without leaving a forwarding address and that he had not advised the Court of a change of address as required by Rule 21(b)(4).↩
7. We note, too, that petitioner's counsel, in securing a continuance of this case for trial on May 12, 1980, advised, "Petitioners expect to be in Buffalo, New York, during the month of July, 1980 and will make every effort to resolve this matter short of trial." The Court, at least so far as this record discloses, has not heard from petitioner or his counsel since May 12, 1980.↩
8. In view of our disposition of respondent's motion and the fact petitioner has not disputed the 1972 income tax deficiency, we are at a loss to understand what further determination is necessary with respect to that year. The same may also be true respecting 1971 although the record is not quite so clear with respect to that year.↩
9. See also Nielson v. Commissioner,T.C. Memo. 1980-453; Smith v. Commissioner,T.C. Memo. 1980-410; Pohlman v. Commissioner,T.C. Memo. 1978-164↩. 10. We are mindful of the possible defenses raised by petitioner in his petition. However, those defenses have been denied in respondent's answer and thoroughly devitalized by the affirmative allegations of the answer which have been deemed admitted.↩
11. Spies v. U.S.,317 U.S. 492, 499 (1943) (cash payments and failure to keep records of income). See also Pizzarelli v. Commissioner,T.C. Memo. 1980-118 (diversion of corporate checks for personal benefit); Schiavone v. Commissioner,T.C. Memo. 1975-246↩ (exclusive use of cash in transactions).