JEAN W. ESTES AND WILLARD H. ESTES, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Estes v. Commissioner
Docket No. 7604-82.
United States Tax Court
T.C. Memo 1984-636; 1984 Tax Ct. Memo LEXIS 37; 49 T.C.M. (CCH) 255; T.C.M. (RIA) 84636; December 6, 1984. *37 Held: Self-employment income and expenses related to E's forestry consulting business determined; Held further, part of the underpayment of E's Federal income tax for 1975 to 1978, inclusive, was due to fraud. Section 6653(b), I.R.C. 1854
Willard H. Estes, Jr., pro se. Theodore Craft, for the respondent. NIMS MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In this case, respondent determined the following deficiencies in Federal income tax and additions to tax: Additions to Tax
Taxable Year
Federal Income Tax
I.R.C. § 6653(b) [1]
1975
$1,682.00
$ 841.00
1976
1,161.00
581.00
1977
2,964.00
1,482.00
1978
1,668.00
834.00
1979
355.00
Total
$7,830.00
$3,738.00
The above deficiencies were determined as follows: 1. In the income tax liability of petitioner, Willard H. Estes, Jr. and the Estate of Phyllis W. Estes, deceased, Willard H. Estes, Jr., Administrator, *38 for the taxable year 1975. The Estate of Phyllis W. Estes is not a party to this proceeding. 2. In the income tax liability of Willard W. Estes, Jr. for the taxable years 1976 and 1977. 3. In the income tax liability of Willard H. Estes, Jr. and Jean W. Estes for the taxable years 1978 and 1979. 4. Respondent determined the addition to tax for fraud under section 6653(b) on the part of Willard W. Estes, Jr. for the years 1975 to 1978, inclusive. The deficiencies resulted from respondent's determination that petitioner Willard H. Estes, Jr. understated gross income from his private forestry consulting business in each of the taxable years in question and that for the years 1975 to 1978, inclusive, such understatements were due to fraud. Some of the facts have been stipulated and are so found. FINDINGS OF FACT Petitioners Willard H. Estes, Jr. (hereinafter sometimes called "petitioner") and Jean W. Estes are husband and wife and resided in Pepperell, Massachusetts, when they filed their petition herein. Jean W. Estes is a party to this case only by reason of having filed joint returns with her husband for some of the years in question. Petitioner filed *39 a joint return individually and as administrator of the Estate of Phyllis W. Estes, deceased, for the taxable year 1975. For the taxable years 1976 and 1977, petitioner filed returns as a qualifying widower with dependent children. In his Notices of Deficiency for these years, respondent reclassified petitioner's status to that of "married filing separately" on the ground that petitioner was married during those years. Petitioner does not contest this change. For the years 1978 to 1979, petitioners filed joint returns. Throughout 1975 to 1978, inclusive, petitioner was employed by the Commonwealth of Massachusetts as a full-time salaried forestry consultant. He was also self-employed part-time as a private forestry consultant. In 1979, petitioner was self-employed full-time as a private forestry consultant. In each of the years 1975 to 1978, inclusive, petitioner received Forms W-2 from his employer, the Commonwealth of Massachusetts, which Forms specified petitioner's gross wages for the particular year to which the Form W-2 related. Petitioner attached a copy of the Form W-2 for the year to which it related to each of his returns filed for years 1975 to 1978, *40 inclusive. Petitioner reported the gross wages shown on each of the Forms W-2 for the particular year to which it related on each of his returns filed for years 1975 to 1978, inclusive. In each of the years 1975 to 1978, inclusive, petitioner earned gross income from his part-time self-employment as a private forestry consultant from the following sources in the following amounts: GROSS RECEIPTS
(Gross Income)
1975
1976
1977
1978
Jowalco, Inc.
$1,400.00
Tambone Corporation
$ 800.00
$ 628.00
2,645.00
Bingham Lumber, Inc.
900.00
Resources Development
Corporation
3,143.00
William R. Tapply &
Son Lumber Co.
1,250.00
75.00
Parke Lumber & Box
Company, Inc.
1,141.50
3,332.50
4,257.50
Ralph A. Esty & Sons,
Inc.
350.00
Curtis Lumber Company
504.85
William Marshall, Jr.
50.00
Irving Davis
931.00
San-Vel Concrete Corporation
50.00
Theodore N. Bachrach
741.00
Dcnald Greig
617.31
Parlee Lumber Box Co., Inc.
2,964.50
Elbthal Realty Trust
5,000.00
Totals
$6,334.50
$5,365.35
$8,727.50
$10,353.81
Petitioner did not report any of the above itemized gross income *41 from part-time self-employment on his returns for the years 1975 to 1977, inclusive. For 1978, of the total $10,353.81 gross self-employment income received by petitioner in that year, $5,949.00 was reported on Schedule C of the 1978 return and $4,405 was unreported. Petitioner made certain payments during 1976, 1977 and 1978, as itemized below: Date
Amount of Check
Payee
Group 1
2/3/76
$20.00
Raymond Gagnon
6/1/76
50.00
Lechemere Sales
6/9/76
10.00
Earl L. Davis & Sons, Inc.
12/8/76
41.34
Verne E. Elliott
12/13/76
$50.00
Marjorie A. Varney
12/30/76
2,186.19
Earle L. Davis & Sons, Inc.
1/25/77
600.00
Ray Gagnon
2/9/77
350.00
Ray Gagnon
2/9/77
607.87
Earl L. Davis & Sons
2/24/77
900.00
William McMahon
3/16/77
500.00
William McMahon
3/16/77
100.00
Verne Elliott
3/23/77
10.71
Mooress
3/25/77
245.00
Verne E. Elliott
3/25/77
527.00
Bill McMahon
4/2/77
161.27
Verne Elliott
4/6/77
303.50
Earle L. Davis & Sons, Inc.
4/9/77
53.82
Verne E. Elliott
4/26/77
385.00
John F. Massey
5/14/77
264.00
Verne E. Elliott
7/22/77
62.45
Verne E. Eliott
8/2/77
39.90
Lechemere Sales
Group 2
2/18/76
50.00
Lechemere Sales
3/16/76
15.00
Lechemere Sales
6/11/76
18.02
Lechemere Sales
6/14/76
50.00
Lechemere Sales
8/28/76
526.15
Lechemere Sales
11/1/76
$33.52
Lechemere Sales
Undated 1977
103.28
Lechemere Sales
2/4/77
255.82
Lechemere Sales
5/31/77
88.20
Lechemere Sales
10/4/77
50.00
Lechemere Sales
11/4/77
50.00
Lechemere Sales
11/28/77
150.00
Lechemere Sales
Group 3
1/12/76
50.00
Gordon College
4/1/76
4.75
N.H.V.T.C. Test
4/10/76
60.00
Robert Estes
5/22/76
100.00
Barbara Estes
6/3/76
15.00
University of Mass.
6/14/76
15.00
University of Mass.
7/26/76
200.00
Barbara Estes
8/26/76
500.00
Gordon College
8/26/76
1,075.50
University of Mass.
9/1/76
100.00
Robert Estes
9/1/76
100.00
Barbara Estes
9/7/76
200.00
Robert Estes
9/27/76
20.00
Barbara Estes
4/12/76
80.00
Robert Estes
10/24/77
375.00
Robert Estes
1/20/78
30.00
Janet Estes
1/31/78
100.00
Barbara Estes
4/19/78
$60.00
Janet Estes
5/15/78
100.00
Stephen Estes
7/17/78
600.00
Stephen Estes
7/17/78
600.00
Robert Estes
7/17/78
600.00
Janet Estes
10/2/78
600.00
Cash
10/28/78
362.00
Robert Estes
*42 In connection with an examination of the returns for 1975 to 1978, inclusive, by an agent of the Internal Revenue Service, petitioner admitted to the examining agent that he had not reported any self-employment income for 1975, 1976 and 1977. In 1978, petitioner paid $1,500 to his son Robert W. Estes for work which Robert performed on petitioner's behalf for Elbthal Brothers of Antrim, New Hampshire. Throughout the years 1975 to 1979, inclusive, petitioner worked as forestry consultant helping private landowners market their timber. This was in addition to the work petitioner performed as an employee of the Commonwealth of Massachusetts during 1975 to 1978, inclusive. Much of petitioner's private consulting work consisted of going through forested land and marking trees to be cut in such a way that the loggers employed by the landowners would know which trees to cut. In addition, the marking made it possible for petitioner to perform a check to make sure that those trees actually cut by the loggers were the ones which petitioner had marked for cutting. In general, petitioner would make up a timber sale contract and carry it through to completion. Petitioner's *43 son Robert was born on May 10, 1957. His son Stephen was born on June 27, 1955. Petitioner also has two daughters: Barbara, born on February 9, 1953, and Janet, born in 1960. All of petitioner's children worked with him from time to time in his forestry consulting business during 1976, 1977 and 1978. Petitioner and his various children would work together in teams of two, in that one person would mark the tree and the other would keep a written tally. Petitioner taught his children how to measure trees, both as to diameter and height. Diameter is measured by using a pair of calipers and height is measured with an instrument called a clinometer. Petitioner also taught his children how to identify and tally various species of hardwood and softwood. The tallying of trees consisted of using a "dotgrid" system with each dot representing a tree to be cut within a given square of the grid. Petitioner used a part of a family room in his home as an office, in which he stored his papers and met with loggers and others in connection with his forestry consulting business. Respondent allowed as deductions certain business expenses incurred by petitioner in connection with his self-employment *44 activities. For the years 1975 to 1977, inclusive, none of these were claimed by petitioner or petitioners on their returns for those years, since no self-employment income was reported. Petitioners claimed deductions against self-employment income for 1978 and 1979. Respondent allowed a portion of the deductions claimed for these latter two years, and disallowed the balance on the ground that they constituted non-deductible personal expenses. The business deductions allowed by respondent are as follows: Item
1975
1976
1977
1978
1979
Heat
$ 83
$ 93
$ 146
$
$
Electricity
55
65
56
Telephone
129
205
365
Insurance
19
64
100
140
Car Expenses
315
Forestry Supplies
21
17
233
Gasoline and Repairs
732
Depreciation
369
619
250
250
Van Expenses
20
Van Repairs
173
Gas and Oil
803
Car and Truck
Expenses
385
1,018
Travel
97
Bank Charges
25
Totals
$622
$1,545
$2,515
$897
$1,268
OPINION Petitioners have conceded that substantial amounts of gross income was omitted from their returns for the years 1975 to 1978, inclusive, but maintain that petitioner Willard H. Estes, *45 Jr. (petitioner) incurred business expenses for all of the years in issue, including 1979, exceeding the amounts allowed by respondent. Petitioners also challenge the addition to tax for fraud under section 6653(b). With the exception of certain amounts which petitioners paid to certain of his children as compensation, we agree with respondent's determination of allowable business expense deductions. As to these latter items, petitioners' evidence consisted of two groups of unexplained checks, listed under "Group 1" and "Group 2" in our Findings of Fact, petitioner's own testimony and some "before and after" pictures of the outside of a room in his house. Petitioner submitted the checks listed in Group 1 as "Office Repairs," but failed to connect in any way any specific check with any specific office repair. Petitioner submitted the checks listed in Group 2 under the rubric "camera supplies," but offered no explanation of the checks' connection with his business. Petitioner testified that one room of his house was used exclusively as a home office. However, respondent's agent visited petitioner in that room, and his description of it convinces us that the room was *46 a family room which petitioner also used for office work. The agent testified that the room, which contained the type of account rements one might expect in a family room, including a sofa, TV set, fireplace, etc., also contained a desk where petitioner could have performed office work. The agent testified that the allowance for home office expense deductions were made on the basis of petitioner's factual representations made to the agent prior to the latter's visit to the home, and that he, the agent, would have made lesser allowances had he seen the room prior to the time he made the allowances. We need not examine the technical requirements of section 280(A)(c) regarding the use of a portion of a residence as a home office, since in any event petitioners have failed to substantiate any home office expenses in excess of those allowed by respondent. In addition, petitioners have totally failed to explain or substantiate any claim for other business deductions -- with the sole exception of compensation paid to certain of the children -- in excess of those allowed by respondent, and we therefore agree with his determination with regard to those items. The checks listed *47 in Group 3 of our Findings of Fact were submitted by petitioners as "Payments to Children." In addition, petitioner and his son, Robert W. Estes, both testified that petitioner paid $1,500 to Robert for work which he performed on petitioner's behalf in 1978 for Elbthal Brothers of Antrim, New Hampshire. In his brief, respondent skirts making a concession that the $1,500 was actually paid and, if it was, that it represents deductible compensation. Given petitioner's overall evasiveness in his dealings with his government as reflected by this case, respondent is perhaps not to be faulted for applying the adage "once burned twice shy" in this instance. Nevertheless, we are satisfied from the testimony that Robert performed services on petitioner's behalf and received the $1,500 payment in 1978. We accordingly allow a $1,500 deduction for that year. We are also satisfied that petitioner's children Barbara, Stephen and Janet, as well as Robert, also performed some services for petitioner in his forestry consulting business in 1976, 1977 and 1978. Petitioner testified with considerable specificity that he and various of his children worked as two-person teams in marking *48 and tallying trees for logging. As suggested by the dates of birth of petitioner's children (which we have listed in our Findings of Fact), the children were old enough during the years at issue to have helped their father with the work he performed. Unfortunately, except for the Elbthal Brothers' job noted above, petitioner has totally failed to connect any of the payments made to or on behalf of his children to any specific job. The payments listed, particularly those to various colleges, could as easily represent personal payments as payments for services. In his testimony, petitioner estimated that each job cost him, in expenses, 50 percent of the amount received. We consider this estimate to be totally unrealistic. In the absence of records, the inexactitude of any allowable deductions is of petitioner's own making, and under the circumstances our own estimates must "bear heavily against the [petitioner]." Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Consequently, in the exercise of our best judgment under the circumstances, we limit our allowance to 50 percent of the payments listed in Group 3 which were made directly to the respective *49 children. The allowable deductions are therefore as follows: 1976-$430; 1977-$188; 1978-$926. Remaining for decision is the question as to whether the addition to tax for fraud is to be imposed for each of the years 1975 to 1978, inclusive. During the examination of his returns for these years, petitioner at first denied that he had failed to report any self-employment income, and then, upon being confronted with evidence that he had received such income, attempted to justify his failure by claiming that the amounts omitted were nominal and would be substantially offset by deductions. In fact, the amount omitted in each of the years was quite substantial. At the trial of this case, petitioner offered no better explanation for his failure to report than that offered to the revenue agent. Section 6653(b) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The existence of fraud is a question of fact to be determined upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. by *50 unpublished order 578 F.2d 1383 (8th Cir. 1978). To prove fraud, the Commissioner must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. Stoltzfus v. United States,398 F.2d 1002, 1004 (3rd Cir. 1968). In the instant case there are specific indicia of fraud. First, there is petitioner's consistent, substantial and admitted understatement of gross income over four years. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. in an unpublished opinion 621 F.2d 439 (5th Cir. 1980). In addition, there is petitioner's blatant denial, when questioned by the revenue agent, that he omitted self-employment income when in fact he had omitted substantial amounts in each of the four years 1975 to 1978, inclusive. Furthermore, it cannot escape our attention that petitioner assiduously and correctly reported the class of income (i.e., wages) which he knew would be reported to the Internal Revenue Service by a third party on W-2 forms, but omitted self-employment revenue which he apparently assumed would go unreported by third parties, and therefore would remain undetected by the IRS. For all *51 of the above reasons, we conclude that respondent has proven by clear and convincing evidence that petitioners' underpayments for the years 1975, 1976, 1977 and 1978 were due to fraud. Accordingly, the additions for fraud under section 6653(b) for those years are sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to sections of the Internal Revenue Code of 1954 in effect for the respective years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩