SAMUEL M. STYRON and SHARON J. STYRON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Styron v. Commissioner
Docket No. 31352-85.
United States Tax Court
T.C. Memo 1987-25; 1987 Tax Ct. Memo LEXIS 25; 52 T.C.M. (CCH) 1373; T.C.M. (RIA) 87025; January 12, 1987. Roland J. Mestayer, Jr. and Michael J. McElhaney, for the petitioners. Helen C. T. Smith, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency respondent determined a deficiency in petitioners' 1981 income tax of $183,359 and an addition to tax under section 6653(b) [1] of $91,679.50. After *27 concessions, the issues that we must decide are: (1) Whether petitioners received unreported income from marijuana sales in 1981; (2) if so, whether petitioners' failure to report the income was due to fraud within the meaning of section 6653(b) or, alternatively, was due to negligence or intentional disregard of rules or regulations within the meaning of section 6653(a); and (3) whether petitioner Sharon J. Styron is relieved of liability by section 6013(e) for any deficiency in tax and addition to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time they filed their petition herein, petitioners Samuel M. Styron (hereinafter "petitioner") and Sharon J. Styron (hereinafter "Sharon") were residents of Foley, Alabama. They filed a joint Federal income tax return for 1981 on which they reported total gross income of $59,617, net taxable income of $404, and a tax of zero. Petitioner is an airplan pilot. During 1981 he was president of Gulf Flying Service, Inc., a corporation that was engaged primarily in crop dusting. Petitioner participated *28 in three separate marijuana smuggling operations during 1981. The first was an operation to smuggle marijuana into the United States using a fishing boat. The boat landed successfully at Perdido Bay on the Alabama coast in February 1981, and unloaded between 15,000 and 16,000 pounds of marijuana. Petitioner's share of the cargo was approximately 3,000 pounds. The second and third operations involved smuggling marijuana by plane. The first plane landed successfully in Alabama in May of 1981. The second plane landed successfully in Alabama on July 4, 1981. Petitioner attempted to hire a pilot to smuggle a third plane load of marijuana. He paid Drug Enforcement Administration agents, posing as pilots, $16,000 before discovering that they were undercover agents. The undercover agents arrested petitioner on July 11, 1981, and confiscated two of his vehicles. [2] He was indicted thereafter for his smuggling-related activities and agreed to cooperate with the authorities in the prosecution of his co-conspirators in exchange for leniency. [3] Petitioner knew that his agreement to cooperate did not relieve him of his obligation to pay Federal income taxes on his income from the smuggling. *29 Petitioners' 1981 joint Federal income tax return was prepared for them in April 1982 by a Foley, Alabama accounting firm. Petitioner did not disclose any income from the smuggling activities to that firm and he represented that he had disclosed to it all of his income. Sharon was unemployed during all of 1981 and relied on petitioner to provide all of her support. She separated from petitioner in May 1981 and lived apart from him until August 1984. [4] She did not participate with petitioner in the smuggling operations and was unaware of them until after he was arrested on July 11, 1981. She was unaware of the income petitioner had received from the smuggling *30 even after he was arrested, and had no reason to be aware of it before their 1981 joint Federal income tax return was filed, as the support she received from petitioner was reasonable in relation to their reported income. She did not inspect the return before it was filed and she did not actually sign it. She instead authorized petitioner to sign her name to the return. In April 1983, respondent became aware of the possibility that petitioner had earned income from the smuggling that had not been reported on petitioners' 1981 joint Federal income tax return. When respondent attempted to investigate, petitioner was uncooperative. [5]
*31 After unsuccessfully, attempting to obtain from petitioner verification of his income and expenses from the smuggling, respondent determined in his notice of deficiency dated May 16, 1985, that petitioner had received $330,000 of unreported income in 1981 from the smuggling activities. Respondent based his determination on petitioner's testimony at the criminal trial of petitioner and his co-conspirators. Respondent increased petitioners' 1981 taxable income by $338,559, [6] and allowed petitioners an additional $18,089 of investment tax credit, [7] as a result of the determination. [8]
*32 Respondent alleged in his answer that petitioners are liable for the addition to tax provided by section 6653(a) if we hold that they are not liable for the addition to tax provided by section 6653(b). ULTIMATE FINDINGS OF FACT 1. Petitioner received additional unreported income in 1981 which resulted in an underpayment of tax for that year. 2. Petitioner's failure to report such income and pay the tax thereon was due to fraud. 3. No part of said underpayment was due to fraud on the part of Sharon. 4. Sharon qualifies for relief from liability herein under the provisions of section 6013(e). OPINION Deficiency
The first issue for decision is the amount of unreported income petitioner received from smuggling in 1981. Petitioner asserts that his income from smuggling should be lower than that determined by respondent because he incurred smuggling-related expenses in excess of those allowed by respondent, [9] and because he split the proceeds from the marijuana sales with a partner. *33 Petitioners bear the burden of proving that their income was lower than that determined by respondent. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). They must overcome the presumption of correctness that attaches to respondent's determination, and they must persuade this Court, by a preponderance of the evidence, that respondent's determination is incorrect. Rockwell v. Commissioner,512 F.2d 882, 885 (9th Cir. 1975), affg. T.C. Memo. 1972-133, cert. denied 423 U.S. 1015 (1975). A taxpayer who fails to keep adequate records of his income and expenses should not be surprised if a court is reluctant to accept his testimony. Webb v. Commissioner,394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo. 1966-81. The bulk of the expenses claimed by petitioner are substantiated by only his own uncorroborated testimony. We recognize that we need not accept petitioner's testimony, even if it is uncontradicted, if we find the testimony to be unreasonable, improbable, or questionable. Lovell & Hart, Inc. v. Commissioner,456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; *34 Commissioner v. Smith,285 F.2d 91, 96 (5th Cir. 1960). We found petitioner's testimony to be questionable and untrustworthy. He was admittedly involved in conspiracies to smuggle illegal drugs into the United States, and had an obvious interest at his trial before this Court in minimizing his taxable income from those conspiracies. In the period since his arrest, petitioner has recounted three distinct versions of his smuggling income. Petitioner was interviewed by agents of the Drug Enforcement Administration on September 4, 1981, and October 21, 1982. In the September 4 interview he stated that he had received $650,000 cash, and was still owed $75,000, for the marijuana he received from the boat that landed in February 1981.He stated that he had paid cash expenses related to that operation totaling approximately $390,000, including $160,000 to $170,000 for use of a boat, $150,000 for a crew, $8,000 to $10,000 for fuel, $50,000 for use of a dock, and $20,000 to transport the unloaded marijuana to a storage facility. He also stated that he received $25,000 for participating in the operation that smuggled marijuana into the United States by air in May 1981, of *35 which $20,000 was given to him to transfer to an attorney, and $20,000 for participating in the operation that smuggled marijuana into the United States by air in July 1981, which he paid to his criminal defense attorneys after he was arrested. Petitioner also testified at the trial of his co-conspirators in July 1982. [10] At their trial petitioner stated that he personally earned, after all expenses, about $300,000 from his share of the marijuana that was smuggled into the United States by boat in February 1981. He further testified that he received $5,000, and either $20,000 or $25,000, respectively, for participating in the two operations that smuggled marijuana into the United States by plane in May and July 1981. Petitioner recounted a fresh version of his smuggling income at the trial of this case. He testified at trial that he lost approximately $100,000 in 1981 from his smuggling activities. According to petitioner, that loss was attributable to the operation that smuggled marijuana into the United States by boat in February 1981. Petitioner *36 testified that he had agreed to pay $1,000,000 for the use of the boat but that the boat landed with less marijuana than expected. His share was consequently worth only $600,000. The boat owner then agreed to accept half of whatever petitioner received as compensation for the use of the boat. Under this version of events, petitioner received gross income before expenses of only $300,000 from the operation. Petitioner testified also that he paid additional cash expenses in connection with the operation that he had not revealed in his earlier statements to Federal drug enforcement agents or in his previous testimony. Petitioner's testimony at trial that he incurred a loss from the smuggling sharply conflicted with his earlier testimony at the criminal trial of his co-conspirators and with his statements to Federal drug enforcement agents. [11] His attempts to reconcile the different versions of his income from smuggling were unpersuasive. We conclude that the most accurate version of petitioner's income from the smuggling was petitioner's testimony at the trial of his co-conspirators.At that trial it was in his interest to be truthful and cooperative in order to fulfill his part *37 of his bargain for leniency. At the trial of this case it was in petitioner's interest to minimize his tax liability. Petitioner's testimony at the trial of his co-conspirators supports respondent's determination of his smuggling income, with the exception of the adjustments discussed below. We accordingly hold that petitioner has failed to meet his burden of proving respondent's determination incorrect, except for the following additional adjustments that the record establishes and which we have found. Respondent determined that petitioner received $25,000 of income from his third smuggling operation, which smuggled marijuana into the United States by plane on July 4, 1981. Respondent based his determination on petitioner's testimony that he earned either $20,000 or $25,000 for his participation in that operation. The parties have since stipulated that petitioner was paid only $20,000. In addition to *38 the expenses directly connected with the three smuggling operations that imported marijuana in February, May, and July 1981, petitioner asserts that he is entitled to deduct other expenses connected with his smuggling business, none of which were allowed by respondent. Two of the expenses were adequately substantiated. Petitioner established that he paid $30,000 of legal fees to defend himself against criminal charges related to his smuggling business, and that he paid $16,000 to hire pilots to work in a fourth operation. We hold that both expenses are deductible by petitioner under section 162 as ordinary and necessary expenses of his smuggling business.[12] Petitioner is not, however, entitled to a deduction for the value of any vehicles that were confiscated by law enforcement authorities. Confiscation of vehicles results in a loss deductible, if at all, under section 165, rather than under section 162. Holt v. Commissioner,69 T.C. 75, 78 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980). Losses incurred in trafficking in marijuana are not deductible under section 165. Holt v. Commissioner,supra at 79-81. *39 In sum, we hold that petitioner has failed to demonstrate error in respondent's determination that petitioner received a net unreported $330,000 from smuggling in 1981, except as to the following items, which we allow as follows: Net income from smuggling
as determined by respondent
$330,000 Reduction in net amount received in
July 1981 operation
(5,000)
Legal fees
(30,000)
Pilot fees
(16,000)
Net income from smuggling corrected
$279,000 Fraud
Having found that petitioner had unreported income in 1981 from smuggling we must decide whether his failure to report that income was due to fraud within the meaning of section 6653(b). Fraud is established if it is shown that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). For the addition to tax for fraud to apply, it is unnecessary for respondent to prove the exact amount of underpayment that was attributable to fraud. It is sufficient for him to prove simply that some part of an underpayment was due to fraud. Loftin & Woodward, Inc. v. United States,577 F.2d 1206, 1236 (5th Cir. 1978). *40 The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). It may, however, be proven by circumstantial evidence as direct proof of a taxpayer's intent is often not available. Korecky v. Commissioner,781 F.2d 1566, 1568 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63. The taxpayer's entire course of conduct may be examined in order to determine whether the fraudulent intent is present. Korecky v. Commissioner,supra at 1568; Stone v. Commissioner,56 T.C. 213, 224 (1971). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Civil fraud need not, however, be proven by respondent "beyond a reasonable doubt." Webb v. Commissioner,supra at 380. *41 After considering petitioner's course of conduct and the entire record, we hold that respondent has met his burden of proving fraud on the part of petitioner by clear and convincing evidence. [13] We hold that respondent has not, however, met his burden of proving fraud on the part of Sharon. (a) Petitioner's Liability Our holding that petitioner fraudulently failed to report his income is based on the presence of a number of indicia of fraud that, considered together, constitute clear and convincing *42 evidence of fraud. [14] A discussion on those indicia follows. Petitioner's refusal to cooperate with respondent's agents during the course of the audit of his 1981 return evidences fraud. Korecky v. Commissioner,supra at 1568; Marcus v. Commissioner,70 T.C. 562, 578 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). Such conduct impedes respondent's ability to collect taxes. Respondent repeatedly scheduled meetings with petitioner and requested petitioner to supply him with information relevant to petitioners' 1981 tax liability. Petitioner obstructed respondent's attempts to establish his tax liability by failing to attend the initial meetings. Petitioner responded with spurious excuses when contacted and asked to explain why he had failed to attend. Petitioner's failure to report an amount of income far in excess of the amount reported on his return also evidences fraud. Benn v. Commissioner,T.C. Memo. 1966-8, affd. per curiam 394 F.2d 505 (5th Cir. 1968). See *43 also Webb v. Commissioner,supra at 379. Petitioners reported total income of only $59,617 on their 1981 joint Federal income tax return. They failed to report $279,000 of income. The fact that the unreported income was from an illegal source strengthens the evidence that petitioner failed to report the income with an intent to evade taxes. See Estate of Brame v. Commissioner,25 T.C. 824, 831 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). Petitioner's act of supplying incomplete information to his tax return preparer similarly evidences his fraud. Korecky v. Commissioner,supra at 1569; Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Petitioner did not disclose his income from his marijuana smuggling to the preparer of his 1981 Federal income tax return. When the preparer asked directly whether he had any income he had failed to disclose to her, he answered that he did not. That answer clearly and unequivocally evidences that his failure to disclose his smuggling income to his preparer was intentional, not accidental. Finally, *44 petitioner's failure to maintain records adequate to determine income and his dealings exclusively in cash evidence a fraudulent intent to conceal income and avoid taxes. Korecky v. Commissioner,supra at 1568; Cefalu v. Commissioner,276 F.2d 122, 129 (5th Cir. 1960), affg. T.C. Memo. 1958-37. Petitioner's dealings in cash and his failure to maintain any records of his income from the smuggling evidence his intent to conceal the income and his plans never to report it to respondent. In sum, the record as a whole clearly and convincingly demonstrates that petitioner's course of conduct was intended to fraudulently prevent the collection of taxes he knew he owed. We hold that respondent properly determined that petitioner is liable for the addition to tax for civil fraud provided by section 6653(b). (b) Sharon's Liability The fraud addition does not apply with respect to the tax of a spouse who joins in filing a joint Federal income tax return unless some part of the underpayment is due to the fraud of the spouse. Sec. 6653(b). To establish Sharon's liability for the fraud addition respondent must establish that her fraud *45 contributed to the underpayment. Merely establishing that petitioner committed fraud will not suffice to support the imposition of the addition for fraud against Sharon. In contrast to the many indicia evidencing petitioner's fraud, there is no evidence of fraud by Sharon. The facts instead establish that she was not involved in the smuggling and that she lacked knowledge of petitioner's income from the smuggling when she authorized petitioner to sign her name to the return. We accordingly hold that respondent has not met his burden of proof of establishing fraudulent conduct by Sharon. Respondent argues for the first time in his answer that petitioners are subject, as an alternative to the addition to tax provided by section 6653(b), to the addition to tax provided by section 6653(a) for negligence or intentional disregard of rules or regulations. As we have held petitioner liable for the addition to tax for fraud on the underpayment resulting from his unreported smuggling income, we need not consider whether either petitioner or Sharon is liable for the addition to tax provided by section 6653(a). Sec. 6653(b); sec. 301.6653-1(b)(2)(ii), Proced. & Admin. Regs. Section *46 6013(e)
Having held that petitioners' 1981 joint Federal income tax return underreported their income we must next decide whether Sharon is relieved by section 6013(e) of liability for any deficiency in tax. Section 6013(d)(3) establishes that filers of joint returns are generally jointly and severally liable for the tax due on their aggregate income. When its provisions are met, however, section 6013(e)(1) permits a spouse who files a joint return to be relieved of liability. Section 6013(e)(1) provides: (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved *47 of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. As the requirements of section 6013(e)(1) are concurrent rather than alternative, a failure to meet any of the requirements prevents a spouse from qualifying for relief from liability under section 6013(e). Respondent concedes on brief that Sharon has met the first two elements of section 6013(e)(1). Sharon has the burden of proving the remaining two elements. Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). The first of the elements that Sharon must establish is that in signing the return she did not know, and had no reason to know, that there was the substantial understatement.The standard to be applied in determining whether a taxpayer had reason to know of omissions is whether a reasonable person in the taxpayer's circumstances could have been expected to know of the omission at the time of signing the return. Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Three factors are significant *48 in determining whether a spouse had reason to know of omissions from gross income: (1) unusual or lavish expenditures; (2) the allegedly innocent spouse's participation in the income producing activity; and (3) the "guilty" spouse's concealment of the income from the allegedly innocent spouse. Sanders v. United States,supra at 167. We found as a fact that Sharon knew of petitioner's smuggling activities in 1981 prior to the time she authorized petitioner to sign her name to petitioners' joint return. Sharon's knowledge that petitioner engaged in illegal activities does not, however, establish that she knew or should have known that the joint return contained a substantial understatement of income. Sharon in fact neither knew nor had reason to know of the substantial understatement of income. She had not participated in the smuggling, and had no knowledge of its details or the amounts of income petitioner obtained from it. She had lived apart from petitioner for almost a year when she authorized her signature to be signed to the return. The support she received from petitioner was consistent with the income reported on the return. The second element that *49 Sharon must establish is that taking into account all the facts and circumstances it is inequitable to hold her liable for the tax deficiency. Section 1.6013-5(b), Income Tax Regs., states that factors that are relevant in determining whether it is inequitable to hold a person liable for a deficiency include whether the person significantly benefited from the unreported income, and whether the person has been divorced or separated from the spouse who earned the unreported income. [15]
Sharon did not significantly benefit from the understated *50 income. She separated from petitioner in early 1981 to live apart from him for over three years, and received only normal support during that time. Normal support is not a significant benefit. Sec. 1.6013-5(b), Income Tax Regs. See Terzian v. Commissioner,72 T.C. 1164, 1172 (1979); Mysse v. Commissioner,57 T.C. 680, 699 (1972). In these circumstances, we conclude that it would be inequitable to hold Sharon liable for the deficiency in tax attributable to the unreported income from petitioner's smuggling. We accordingly hold that Sharon has established that she meets the requirements of section 6013(e) and is relieved of liability for the deficiency in tax. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The vehicles were a 1979 Ford pickup truck and a 1975 Pontiac. ↩
3. Petitioner was indicted in both Florida and Alabama. He hired attorney Leo Thomas of Pensacola, Florida to represent him in the criminal proceeding brought against him in Florida. Petitioner paid Thomas $10,000 in 1981 in connection with the representation. Petitioner hired attorney Thomas Haas to represent him in the criminal proceeding instituted against him in Alabama. Petitioner paid Haas $20,000 in 1981 in connection with the representation.↩
4. Sharon was divorced from petitioner for a short time during their separation. She divorced petitioner on March 8, 1982, and remarried petitioner on June 15, 1982.↩
5. Respondent contacted petitioner and scheduled a meeting with him for July 15, 1983. Petitioner was to attend the meeting and bring with him information relevant to his 1981 tax liability. Petitioner failed to attend the meeting. When respondent contacted him for an explanation, petitioner promised to have a Justice Department employee call respondent the next day to explain his absence. After no one called, respondent scheduled another interview with petitioner for August 29, 1983. On August 29, petitioner's probation officer called to postpone the appointment. The appointment was then rescheduled for October 3, 1983. Petitioner attended the October 3 meeting and admitted that he had income from smuggling in 1981. He stated, however, that his expenses were greater than his income but he did not verify his expenses. Petitioner stated that he was unable to verify any of his smuggling-related expenses as most were paid in cash and his few records had been destroyed in a fire.↩
6. Respondent's determination that petitioners received an additional $330,000 of income resulted in the disallowance of $8,591 of medical and dental expenses claimed as itemized deductions and the allowance of an additional $32 of sales tax deduction. ↩
7. Petitioners had carried $18,089 of unused investment tax credits to 1981 but had been unable to deduct those credits as their 1981 return reflected no tax liability. ↩
8. Following his determination, respondent initially assessed an income tax deficiency of $185,909, an addition to tax under sec. 6653(b) of $92,955, and interest of $93,820.30 by a jeopardy assessment entered on March 27, 1985. The jeopardy assessment was fully abated on May 10, 1985, prior to the mailing of the notice of deficiency on which this action is based.↩
9. In the absence of books and records, respondent is entitled to reconstruct a taxpayer's income by any method that is reasonable. Holland v. United States,348 U.S. 121 (1954); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. by an unpublished opinion 559 F.2d 1207 (3d Cir. 1977). Respondent's reliance on petitioner's testimony as to his net income from smuggling is a reasonable method, at least in cases such as this where no better evidence is available. See Roloff v. Commissioner,T.C. Memo. 1981-18. Respondent's reconstruction of petitioner's smuggling income allowed petitioner credit for significant expenses. As is discussed more fully infra, petitioner admitted to Federal agents that he received $675,000 of gross income in 1981 from his smuggling activity. Respondent's determination that petitioner received $330,000 of net income from the activity implicitly granted petitioner credit for $345,000 of expenses related to the smuggling. The $345,000 of expenses implicitly allowed by respondent covers the bulk of the expenses that petitioner recounted to Federal agents which included expenses for a boat, a crew, fuel, a dock, and transportation of the unloaded marijuana to a storage facility. Sec. 280E, which disallows the deduction of expenses incurred in the trade or business of trafficking in controlled substances, is inapplicable to this case. It applies only to amounts paid or incurred after September 3, 1982, in tax years ending after such date.↩
10. A certified transcript of petitioner's testimony at the trial of his co-conspirators was entered into evidence by respondent.↩
11. The testimony contrasted with his earlier statements to Federal drug enforcement agents that he had paid only $160,000 to $170,000 for the use of the boat, and his testimony that he had personally earned, after all expenses, approximately $300,000 from the operation.↩
12. Legal fees in the unsuccessful defense of a taxpayer against criminal charges arising from his business activity are deductible under sec. 162(a) in situations such as those in this case. Commissioner v. Tellier,383 U.S. 687, 691-692↩ (1966).
13. We are fully aware that we cannot base a finding of fraud on a finding that petitioner has failed to carry his burden of proof with respect to the basic deficiency. Webb v. Commissioner,394 F.2d 366, 379 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Estate of Beck v. Commissioner,56 T.C. 297, 363↩ (1971). We have made an affirmative finding that petitioner received unreported income from smuggling. Our finding of fraud is based both on our finding of clear and convincing evidence that petitioners understated their income, and our finding of clear and convincing evidence of fraud by petitioner as is discussed more fully hereinafter.
14. For a summary of the indicia of fraud see Webb v. Commissioner,supra↩ at 378 n. 11.
15. Sec. 6013(e) was amended after sec. 1.6013-5(b), Income Tax Regs., was promulgated. Prior to its amendment sec. 6013(e) explicitly required that we consider "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income." Although sec. 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. See H. Rept. 98-432, Pt. 2 1501, 1502 (March 5, 1984); DeMartino v. Commissioner,T.C. Memo. 1986-263↩ at n. 30.