MARK S. HAINES AND LYNNE W. HAINES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haines v. Commissioner
Docket No. 4632-84.
United States Tax Court
T.C. Memo 1987-34; 1987 Tax Ct. Memo LEXIS 34; 52 T.C.M. (CCH) 1415; T.C.M. (RIA) 87034; January 15, 1987. *34 Respondent determined deficiencies and an addition to tax for fraud for each of the taxable years in issue, based upon unreported income, unreported capital gains, and disallowances of claimed deductions. Held, petitioner-husband has failed to establish that he reported all of his income for each year, or that the unreported payments he received constitute either amounts that he paid to another person or that he received in the form of loans. Held further, petitioner has failed to establish that the determined unreported capital gains are inaccurate or that he is entitled to deduct the disallowed amounts claimed. Held further, respondent has established that petitioners are liable for an addition to tax for fraud under sec. 6653(b), I.R.C. 1954, for each year in issue. Held further, the statute of limitations does not bar the assessment or collection of tax due for any year in issue under sec. 6501(c)(1). Robert J. Hipple, for the petitioner. Stephen R. Klorfein, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: Respondent determined by notice of deficiency dated November 23, 1983 deficiencies and an addition to tax for fraud under section 6653(b) *35 [1] in the Federal income taxes of petitioners Mark S. Haines and Lynne W. Haines for the taxable years ended December 31, 1972 through December 31, 1974, as follows: Addition to Tax Under
Year
Deficiency
Sec. 6653(b)
1972
$29,132.83
$14,566.42
1973
29,989.00
14,994.50
1974
22,489.00
[2] 11,244.50
In the notice of deficiency, respondent determined said deficiencies and addition to tax against both petitioners but also determined that, in accordance with section 6013(e), petitioner Lynne W. Haines' liability was limited to deficiencies in the amounts of $1,335 and $851, for the 1973 and 1974 taxable years, respectively, and that she was not liable for the determined addition to tax for any year. After concessions, the issues for decision are: (1) whether respondent has properly determined deficiencies in petitioners' Federal income tax for each of the taxable *36 years in issue, (2) whether respondent has properly determined an addition to tax for fraud under section 6653(b), and (3) whether the statute of limitations bars the assessment and collection of any such determined deficiencies or addition to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein by this reference. During all of the taxable years in issue, petitioners Mark S. Haines and Lynne W. Haines were husband and wife and filed joint Federal income tax returns with the Internal Revenue Service Center in Chamblee, Georgia. Their returns were prepared by certified public accounting firms from information supplied by petitioners. Petitioners were divorced in 1975. At the time of filing their petition in this case, petitioner Mark S. Haines resided in Del Mar, California and petitioner Lynne W. Haines resided in Palo Alto, California. Hereinafter the term "petitioner" used in the singular shall refer to petitioner Mark S. Haines. Beginning in 1966 and during all of the taxable years in issue, petitioner was employed as a real estate manager by W.T. Grant and Company (Grant), the *37 since-bankrupt national retail department store chain. From 1966 to 1972, petitioner worked in Grant's Central Region real estate department headquarters in Chicago, Illinois, which department was responsible for real estate acquisitions in the Midwest. In 1972, petitioner was transferred to Atlanta, Georgia, where his responsibilities included the selection of Grant store sites and their real estate developers in the Southeast. Petitioner transacted business with many real estate developers, including John W. Waits (Waits). Waits indicated to petitioner that his political connections could be of considerable assistance to Grant in overcoming zoning or similar problems. In 1972 and 1973, petitioner received checks in amounts totaling $27,522.15 and $23,000, respectively, drawn on the accounts of corporations of which Waits was president. All of these checks were mailed to petitioner's personal residence and were cashed by petitioner. In 1974, petitioner received a check from Waits in the amount of $1,000 as a commission on the sale of certain property in Louisiana. Also in 1974, a $3,350 car was purchased in petitioner's name from a car dealership owned by Wait's brother. The *38 car was paid for in part by petitioner's trade-in of a car previously given to him by Waits, plus a check by Waits in the amount of $2,000. Waits also paid for some of petitioner's personal expenses on business trips taken together in 1972 and 1973. Another real estate developer of Grant store locations was Melvin Simon and Associates (Simon). Simon paid a total of $6,000 in 1973, and $15,000 in 1974, to an individual by the name of Rodney J. Putz (Putz), who in turn issued checks to petitioner in these same years and for these same amounts. The checks issued to petitioner were drawn on the account of "Rodney J. Putz Licensed Real Estate Broker." On the face of both checks were written the words "Finders Fees." Petitioner also did business with Henry Nelson (Nelson), president and 25-percent shareholder of Viking American Construction Company (Viking). Viking was a general contracting company that developed shopping centers that included Grant stores. In 1973 Nelson issued a check to petitioner in the amount of $15,000. Petitioner also received payments from Herbert Glimcher (Glimcher), president of Intercity Construction Company (Intercity) of Columbus, Ohio. In 1972, Glimcher *39 issued a check in the amount of $3,000 to "L. Haines" for demographic services performed by petitioner. In 1974, Glimcher issued three checks for a total amount of $20,000 for consulting fees, payable to the order of either "L. Haines" or B. Clanton," a fictitious name used by petitioner. All of these checks were cashed or deposited by petitioner. In 1972, petitioner cashed two checks payable to "Cash" in the amounts of $600 and $24,000, drawn on the account of Union Lake Associates (Union Lake), another entity that transacted business with Grant. Petitioner also received a check in the amount of $5,000 from Delco Development Corporation (Delco), another developer of shopping center locations. In 1973, petitioner cashed a check payable to "Cash," in the amount of $2,000, issued by Omega Properties (Omega), an entity which held properties upon which several Grant stores were located. Petitioner also received checks in the amounts of $3,000 in 1973 and $5,000 in 1974, issued by Eugene Stone, doing business as Blue Eagle Company, as real estate developing firm. In 1974, petitioner also received a cashier's check in the amount of $5,000, paid for by Brian Clancy (Clancy), another *40 real estate developer. Petitioner also received a check in the amount of $5,000 from Benedict Silverman (Silverman), whom petitioner was "instrumental in steering" to other persons who developed shopping centers in which Grant stores would be located. [3] In 1974, petitioner received two checks for a total amount of $7,500, drawn on the account of a partnership in which Silverman was a general partner. The checks stated that they were issued for either a brokerage or consultant fee. Petitioner reported this $7,500 amount on his 1974 return. Petitioner's 1972 return was audited in 1974. Petitioner told the auditor that all of his and his wife's income had been reported on their return, and the audit was closed with only minor adjustments. However, petitioner did not notify his tax preparers that he received money from the following sources: for 1972 -- Waits, Union Lake, Intercity, Delco; for 1973 -- Waits, Silverman, Viking, Blue Eagle, Putz, Omega; for 1974 -- Waits, Intercity, Blue Eagle, Putz, Clancy. In January 1972, petitioner *41 purchased three parcels of land in Puerta Vallarta, Jalisco, Mexico, containing a total of approximately 5,290 square meters, for $42,327. Two of the parcels consisted of vacant land, and a house was located on the third parcel. In February 1974, petitioner sold the parcel upon which the house was located for $36,500. Later in 1974, he sold at least one of the other two parcels. Petitioner did not report any gain or loss in 1974 with respect to the disposition of any of this property in Mexico. On January 31, 1975, petitioner was fired by Grant, which accused him of receiving kickbacks from real estate developers in return for his personal influence in the selection of Grant store locations. Grant commenced an action in Federal District Court against petitioner and its complaint alleged, "inter alia, losses resulting from alleged acts of dishonesty and/or breaches of * * * [petitioner and other former Grant employees'] fiduciary duties." In 1978, petitioner and the trustee appointed for Grant's bankrupt estate executed a Settlement Agreement and the action against petitioner was dismissed. On February 26, 1980, petitioner was indicted by a Federal grand jury on two counts of Federal *42 tax evasion, [4] specifically, for willfully and knowingly attempting to evade taxes due, and for filing false and fraudulent income tax returns for the 1973 and 1974 taxable years. Petitioner pleaded guilty to the charge for 1974, and on November 6, 1980, a judgment was entered against petitioner for this year only, in accordance with petitioner's plea bargain. Petitioner cooperated with the Government in its investigation of an alleged conspiracy of bribes or kickbacks between former Grant employees and others with whom they did business. [5] In the statutory notice of deficiency, respondent determined deficiencies and an addition to tax for fraud in petitioner's Federal income tax for the 1972 through 1974 taxable years. In the notice of deficiency, respondent determined that petitioner failed to *43 report income in the following amounts from these sources: Source
Taxable Year
1972
1973
1974
Waits
$30,872
$28,000
$ 1,000
Union Lake
24,600
Intercity
3,000
20,000
Delco
5,000
Silverman
5,000
Viking
15,000
Blue Eagle
3,000
5,000
Putz
6,000
15,000
Omega
2,000
Clancy
5,000
Totals
$63,472
$59,000
$46,000
Respondent also disallowed in part a charitable contribution deduction claimed in 1973, business entertainment expenses, home office deductions, and medical expenses claimed in 1973 and 1974, and further determined that petitioner failed to report long-term capital gains upon the disposition of property in Mexico in 1974. OPINION Deficiencies Determined
The first issue for decision is whether respondent has properly determined deficiencies in petitioner's Federal income taxes for the 1972 through 1974 taxable years, based upon (1) unreported income, (2) unreported capital gains, and (3) the disallowance of certain claimed deductions. Petitioner bears the burden of proof with respect to the determined deficiencies. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). Unreported Income
Petitioner appears to take two inconsistent positions with respect to the deficiencies determined based upon the unreported income. *44 First, the parties have stipulated that petitioner did not notify his tax preparers that he received payments in each year in issue from numerous sources, as more specifically set forth in the Findings of Fact. Petitioner argues that he did inform his tax preparers of the total amount of his income in each year but simply did not identify the particular sources of his income. [6] However, petitioner has not attempted to identify where he reported such amounts on his Federal income tax returns, and based upon our own examination of the returns, we are unable to ascertain whether such amounts were reported. Second, however, petitioner also does not dispute that he did not report in income certain payments that he did receive during each of the years in issue, but contends that such amounts are not properly *45 includable in his income. He argues that all of such unreported amounts consist of either money that he paid to his immediate supervisor, Jack Christensen, or money that he received in the form of loans. Petitioner admits that he has no records or other documentation to support his argument that he paid certain sums of cash to Christensen. [7] *46 Petitioner also admits that the purported loans were not evidenced by writings, not interest-bearing, not secured by collateral, and were not repaid as of the date of trial. [8] Petitioner's arguments consist almost entirely of his unsupported and self-serving statements. Moreover, we have observed petitioner's demeanor at trial and find that his testimony is not credible. Therefore, we conclude that petitioner has failed to establish that he has reported all of his income for each of the years in issue, or that the unreported payments received do not constitute income to him. [9]
Unreported Capital Gains
Respondent also has determined that petitioner has failed to report long-term capital gains in 1974, in the amount of $14,173, upon the sale of certain property in Mexico. Petitioner erroneously argues on brief that, because respondent has determined that petitioner's failure to report this amount is due to fraud, respondent bears the burden of proof on this issue. Although respondent bears the burden of proof *47 with respect to the determined addition to tax for fraud, Rule 142(b), petitioner must bear the burden of proof with respect to the determined underlying deficiency. Rule 142(a). In 1972, petitioner purchased three parcels of land located in Mexico at a total cost of $42,327. Respondent has determined that this land was sold in 1974 for $56,500, specifically, $36,500 for one parcel and $10,000 for each of the two remaining parcels. Petitioner has testified that he did sell one parcel for $36,500 and at least one other parcel, apparently for $7,200. Nevertheless, petitioner maintains that he disposed of the land at a "very substantial loss," based upon various fees paid to the Mexican government plus costs incurred in the construction of a house on one of the parcels acquired as vacant land. [10]
Petitioner has not produced any evidence of his payments of such government fees, nor of his contention that he incurred between $70,000 and $90,000 in construction costs; he merely has introduced photographs of the house under construction *48 and in its finished condition as of 1976 as evidence of his expenses. At trial, petitioner referred to a check register that he kept in 1974 with respect to payments purportedly made to the Mexican government, but no such checks or check register were introduced into evidence. Petitioner also stated that only "real sketchy notes" were kept with respect to the construction costs of the house. Clearly, petitioner has failed to substantiate his purported expenditures or demonstrate that the determined unreported long-term capital gains are inaccurate. Therefore, we sustain the deficiency attributable to this determination. Disallowed Deductions
Respondent also has disallowed deductions claimed by petitioner with respect to part of a claimed charitable contribution deduction, business entertainment expenses, home office deductions, and medical expenses. Petitioner must demonstrate that he is entitled to deduct the amounts claimed. New Colonial Ice Co. v. Commissioner,292 U.S. 435, 440 (1934). Inasmuch as petitioner has failed to present any documentation that might substantiate any of the disallowed deductions, we conclude that he has failed to demonstrate that he is entitled to *49 deduct such amounts. Grand Jury Information
Finally, we add that petitioner argues, for the first time on brief, that the Government acted improperly during its grand jury investigation against petitioner, and any evidence based upon such improper conduct should not be given any weight. However, our decision here is based upon petitioner's failure to present credible evidence to corroborate his arguments that the determined deficiencies are incorrect, rather than respondent's reliance upon any information that might have been obtained through the grand jury investigation. [11] *50 Accordingly, we sustain respondent's determinations of the deficiencies in each of the years in issue. Addition to Tax
Respondent also has determined that petitioner is liable for an addition to tax under section 6653(b)[12] for filing false and fraudulent returns for each year in issue. Petitioner does not contest the determined addition for the 1974 taxable year but argues that any deficiency in his tax for 1972 or 1973 is not due to fraud. Respondent bears the burden of proving, by clear and convincing evidence, that any part of an underpayment for 1972 and 1973 is due to fraud. Sec. 7454(a); [13]Rule 142(b); Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). *51 We find that respondent has met his burden of proof. The issue of fraud is a question of fact to be determined upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Stratton v. Commissioner,54 T.C. 255, 284 (1970). For purposes of section 6653(b), the term "fraud" has been defined as "intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); *52 Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Fraud cannot be presumed but rather must be established affirmatively. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraudulent intent is rarely established by direct proof, but may be found based upon reasonable inferences drawn from a taxpayer's entire course of conduct. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 106 (1969). The parties have stipulated that petitioner failed to inform his tax preparers that he received payments in each of the years in issue from various sources enumerated in the stipulation. As stated in the Deficiencies Determined section above, we have rejected petitioner's contention that he merely failed to inform his preparers of the sources of these payments but did notify them of the full amount of his income. Also, petitioner has failed to establish that certain payments that he received during the years in issue are not includable in his income because such amounts constitute either loans to him or amounts that he paid to his supervisor. Moreover, as stated above, petitioner has testified that he repaid one *53 such purported loan, in an amount in excess of $20,000, with unreported gambling winnings. Petitioner has failed to report in income a total of over $168,000 for the 3 years in issue, which is a substantial amount and particularly so in proportion to the amounts of income petitioner has reported for the 3 years. The consistent and substantial understatement of income alone may be strong evidence of fraud. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). Moreover, petitioner's conduct clearly supports respondent's position that petitioner's actions were "calculated to conceal, mislead or otherwise prevent the collection" of Federal income tax due and owing. Stoltzfus v. United States,supra at 1004. Accordingly, we sustain the determined addition to tax for fraud under section 6653(b) in 1972 and 1973. Statute of Limitations
Petitioner has raised the defense that the statute of limitations bars the assessment and collection of the determined deficiencies and addition to tax. Based upon our decision to sustain the determination that petitioner is liable for an addition to tax for fraud under section 6653(b) for 1972 and *54 1973, and petitioner's concession that he is liable for the fraud addition for 1974, the assessment of petitioner's tax liability for each year may be made "at any time" under section 6501(c)(1). [14] Accordingly, we conclude that the statute of limitations does not bar the assessment or collection of the determined deficiencies or addition to tax for any of the years in issue. Innocent Spouse
In the notice of deficiency, respondent determined the full amount of the determined deficiencies and the addition to tax against both petitioners. *55 However, respondent also has determined that, based upon section 6013(e), Spouse Relieved of Liability in Certain Cases, [15] petitioner Lynne W. Haines' (petitioner-wife) liability is limited to lesser amounts of the deficiencies determined for 1973 and 1974 only and is not liable for any of the determined addition to tax in any year. In the petition, it is alleged that (1) petitioner-wife "had no knowledge or benefit from any income omitted from any federal joint income tax returns of Petitioners for the years 1973 and 1974," and (2) that any assessment against or collection of additional tax from petitioner-wife is barred by the statute of limitations. However, at trial, petitioner Mark S. Haines testified that his former wife did have knowledge of, although was not involved in, his dealings with the various real estate developers discussed above. More importantly, inasmuch *56 as petitioners have failed to present any argument or evidence in support of these allegations, raised only in their petition, we assume that this issue has been abandoned. Therefore, we need not address the merits, if any, of such arguments. [16]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners do not contest the addition to tax determined against petitioner Mark S. Haines for the 1974 taxable year.↩
3. The parties have not stipulated to the year in which petitioner received this check, and the date on the copy of the check in evidence is illegible.↩
4. The charges were brought under section 7201. ↩
5. Petitioner's plea bargain statement stated that petitioner provided information against several other persons, including John Christensen, who had been petitioner's immediate supervisor at Grant. On July 22, 1980, Christensen was indicted by a Federal grand jury; on that same day, shortly after the indictment was returned, Christensen died.↩
6. Petitioner contends that some of the money he received was for services rendered, such as for demographic information, but that other payments received were not for any services rendered, as in the following statements made at trial: A. I didn't do anything on the money regarding Brian Clancy. Q. You just got the money from Mr. Clancy? A. Yeah, a check showed up in the mail one day.↩
7. Petitioner argues that he is missing many of his records, which he alleges were never returned to him after the Government's criminal investigation into his business activities. However, witnesses for respondent have testified to the contrary that all of petitioner's records, consisting of only two or three folders, were returned to him. 8. Petitioner has testified that he did repay one loan, in an amount in excess of $20,000, from gambling winnings. However, petitioner admits he did not report any such gambling winnings in income. Therefore, even if he had repaid such a loan, he still would have failed to report income in the same amount from his gambling winnings. ↩
9. One witness testifying on behalf of respondent indicated that petitioner received $2,500 as a bona fide loan from Eugene Stone, doing business as Blue Eagle, a real estate developing firm. Therefore, an appropriate adjustment should be made in the parties' computations under Rule 155 to eliminate the amount of the deficiency attributable to such amount.↩
10. Petitioner argues that he did not claim a loss upon the sale of this property because it was "not↩ at all clear" that he was entitled to deduct such loss.
11. Apparently, a Rule 6(e) order, pursuant to the Federal Rules of Criminal Procedure, was applied for but was denied in this case, and the special agents for the Criminal Investigation Division of the Internal Revenue Service refused to answer several questions posed to them at trial, due to the secrecy of the grand jury process. We also note that the stipulated exhibits include (1) petitioner's plea bargain statement, which refers to a purported loan from Waits that petitioner had "no specific intention to repay * * * at any particular time," and lease cancellation commissions from Clancy and Silverman that were paid in part to petitioner, and (2) the Department of Justice's sentencing memo, which specifically refers to the government's ability to have documented before the grand jury payments to petitioner, labeled kickbacks, from various real estate developers, in the amounts of $98,000, $57,000 and $63,500, for 1972, 1973 and 1974, respectively. The parties have stipulated that such exhibits "are accepted as facts," and their use has not been objected to by petitioner on the basis of hearsay or for any other reason.
12. Sec. 6653 provides in relevant part as follows: Sec. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount egual to 50 percent of the underpayment. * * * ↩
13. Sec. 7454 provides in relevant part as follows: SEC. 7454. BURDEN OF PROOF IN FRAUD * * * CASES. (a) Fraud. -- In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate. * * *↩
14. Section 6501 provides in relevant part as follows: SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * *, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. * * * (c) Exceptions. -- (1) False Return. -- In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. * * *↩
15. Section 6013(e), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, 1984-3 C.B. (Vol. 1) 309-310, has retroactive application to all taxable years to which the Internal Revenue Codes of 1939 and 1954 apply. See H. Rept. 98-432, Pt. 2 1501, 1503 (Mar. 5, 1984).↩
16. See also Stone v. Commissioner,56 T.C. 213, 227-228↩ (1971) (respondent's proof of fraud against taxpayer-husband prevented the statute of limitations from running and taxpayer-wife remained liable for deficiencies determined against the joint returns made for the years in issue).